UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ANTHONY ARRIAGA,

                    Plaintiff,

v.

JOANA OTAIZA, et al.,

                    Defendants.
-------------------------------------------------------X

                    **MEMORANDUM**
                    **OPINION AND ORDER**

                    20-CV-06992 (PMH)

PHILIP M. HALPERN, United States District Judge:

       Plaintiff, currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging that Hearing Officer Joanna Otaiza ("Otaiza") and New York State Department of Corrections and Community Supervision ("DOCCS") Director of Special Housing Donald Venettozzi ("Venettozzi", and together, "Defendants") violated his due process rights in connection with a disciplinary hearing and were deliberately indifferent to the conditions of his confinement in keeplock at Sing Sing. (Doc. 2, "Compl."). Plaintiff alleges further that these were acts of retaliation and conspiracy against him.

       Defendants filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on May 7, 2021. (Doc. 28; Doc. 29, "Def. Br."). Plaintiff opposed the motion on June 8, 2021 (Doc. 30, "Pl. Opp."), and the motion was fully briefed with the filing of Defendants' reply memorandum of law in further support of their motion to dismiss on June 21, 2021 (Doc. 31, "Reply Br.").

       For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff filed a lawsuit in March 2016 entitled *Arriaga v. Gage*, No. 16-CV-01628 (PMH) ("*Arriaga I*") regarding, *inter alia*, his medical care at Sing Sing, as well as claims against Sergeant Alvarado—who is not a party to this action—for allegedly confiscating Plaintiff's prescription glasses and cane, and falsifying a misbehavior report against Plaintiff.[1] (Compl. at 4-5, 17).[2] While a motion by Alvarado and others to dismiss *Arriaga I* was pending, on September 15, 2017, Alvarado searched Plaintiff's cell and purported to find items that violated Sing Sing's rules, including "excess/altered clothes" and four temporary passes. (*Id*. at 3).

Two other correction officers also searched the law library, focusing primarily on workstation #6 where Plaintiff had been working. (*Id*. at 2-3). Plaintiff alleges that prior to these searches he had a job as a law library clerk and was housed on the "honor block," also known as the Earned Housing Unit, which afforded him many privileges. (*Id*. at 2, 8-9). As a result of the searches, however, Plaintiff was immediately placed on keeplock status and removed from his library law clerk position. (*Id*. at 8-9). Another inmate told Plaintiff that he overheard staff saying that Plaintiff would be found guilty no matter what "because they want Plaintiff out of the law library." (*Id*. at 4).

The disciplinary hearing began on September 20, 2017 and concluded on October 27, 2017. (*Id*. at 3). When Plaintiff entered the hearing room on October 27, 2017, Otaiza already had a guilty disposition completed, even though she had previously granted Plaintiff's request to review and respond to documents filed by the facility; she read the guilty disposition into the record, denying

---

[1] On October 2, 2020, *Arriaga I* was settled and Plaintiff's claims in that action were voluntarily discontinued.

[2] Citations to the Complaint correspond to the pagination generated by ECF.

Plaintiff any opportunity to respond to or oppose the evidence. (*Id*. at 8). Otaiza sentenced Plaintiff to ninety days' keeplock, and loss of recreation, phones, packages, and commissary. (*Id*.).

On November 14, 2017, Plaintiff appealed the decision to Venettozzi, who affirmed the decision on December 1, 2017. (*Id*. at 11-12). On December 15, 2017, Plaintiff filed an Article 78 proceeding in the New York State Supreme Court, Albany County, challenging the disciplinary determination, and on March 26, 2018, the state court reversed the decision and ordered that it be expunged from Plaintiff's records. (*Id.* at 12).

Plaintiff commenced the instant action on August 26, 2020.

## STANDARD OF REVIEW

I.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id*. (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections

become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.   Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.   Lack of Subject-Matter Jurisdiction

The Court, as guided by precedent, turns first to Defendants' arguments regarding the lack of subject-matter jurisdiction and dismissal required under Rule 12(b)(1).

A.   New York Correction Law § 24

Plaintiff does not specifically identify any state law claims for relief aside from generally referencing the existence of such claims. (*See* Compl. at 1 (claiming that the Complaint raises "supplemental state law claims")). Defendants argue that to the extent Plaintiff raises supplemental state law claims concerning any constitutional violations, the Court must dismiss those claims for want of subject-matter jurisdiction. (Def. Br. at 13-14).

New York Correction Law § 24 provides, in pertinent part:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Corr. Law §§ 24(1)-(2). "The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, No. 19-CV-07977, 2020 WL 7047697, at *21 (S.D.N.Y. Nov. 30, 2020) (quoting *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385

(S.D.N.Y. 2015)); *see also Davis v. McCready*, 283 F. Supp. 3d 108, 124 (S.D.N.Y. 2017)

("[U]nder Section 24, any tort claim arising under New York law . . . must be dismissed for lack

of subject matter jurisdiction."); *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (S.D.N.Y. 2014)

("Plaintiff's state law claims against Defendants . . . are barred because New York Correction Law

§ 24 shields them from liability for state law claims in both state and federal court.").

Plaintiff does not suggest that Defendants acted outside the scope of their employment.

(*See generally* Compl.); *see also Cruz*, 24 F. Supp. 3d at 310 (explaining that "[t]he test to

determine whether the defendants' actions fall within the scope of their employment is whether

the act was done while the servant was doing the master's work no matter how irregularly, or with

what disregard of instructions" (internal quotation marks omitted)). As such, because any state law

claims against Defendants "would be barred in New York state courts, this Court equally lacks

jurisdiction over the claims." *Hassell*, 96 F. Supp. 3d at 385. While this conclusion requires that

any claims pressed under New York state law be dismissed, it does not impact the viability of any

claims under federal law.

### B. Eleventh Amendment

Insofar as Plaintiff seeks relief under 42 U.S.C. § 1983, Defendants argue that the claims

must be dismissed to the extent they seek "damages against Defendants in their official capacities

. . . ." (Def. Br. at 12). This argument is based upon the immunity provided under the Eleventh

Amendment. (*Id*.).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

Const. amend. XI. This language has been interpreted to bar suits in federal court, even those

arising under federal law, against a state by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Consequently, because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are dismissed under Rule 12(b)(1) to the extent they seek relief against Defendants in their official capacities. This result does not affect the 42 U.S.C. § 1983 claims against Defendants in their individual capacities; and therefore the Court must consider Defendants' arguments for dismissal under Rule 12(b)(6) as to those claims.

II.   <u>Failure to State a Claim Upon Which Relief Can Be Granted</u>

Reading the Complaint liberally, Plaintiff asserts claims against each Defendant for violations of the First, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or

causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). "As such, in each permutation of a claim under that law, a plaintiff must demonstrate: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *5 (S.D.N.Y. Feb. 5, 2021) (internal quotation marks omitted).

Defendants advance a variety of arguments as to why Plaintiff's claims for relief should be dismissed. The Court addresses these arguments *seriatim*.

A. <u>Failure to Plead Defendants' Personal Involvement</u>

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Moreover, as recently emphasized by the Second Circuit, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that actor; rather, "supervisory liability requires that the 'defendant, through the official's own individual actions, has violated the Constitution.'" *Novoa*, 2021 WL 431445, at *6 (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)); *see also Greene v. Sampson*, No. 18-CV-06103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021).

9

1. <u>Venettozzi</u>

Venettozzi's role in this action is limited to the following: (1) he is the DOCCS Director of Special Housing (Compl. at 2, 11); (2) he "was notified of the constitutional violations due to the receipt of and processing of the appeal and letter sent by Plaintiff's attorney" (*id*. at 11); (3) he "reviewed [the appeal] and did nothing to take corrective action after learning of subordinate's unlawful conduct" (*id*. at 11-12); (4) by affirming the guilty disposition, he denied Plaintiff of "the due process safeguards specified in the complaint and . . . should have upheld those constitutional standards" (*id*. at 12); and (5) he "creat[ed] a policy or custom fostering the unlawful conduct" (*id*. at 12). None of these facts, together or separately, allege plausibly that Venettozzi was personally involved in the alleged due process violation at the underlying disciplinary hearing, any violation concerning Plaintiff's conditions of confinement, any First Amendment retaliation, or any conspiracy.

The first allegation involves Venettozzi based on his position in the DOCCS hierarchy; this is insufficient to establish personal involvement. *See Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) (explaining that "a mere 'linkage' to the unlawful conduct through the 'chain of command' . . . is insufficient to show . . . personal involvement"). As regards the second allegation, simply receiving a letter from an inmate does not render the official personally involved with respect to the subject matter of the letter. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir. 1997). The third and fourth allegations do not establish personal involvement, as review and affirmation of the disposition of Plaintiff's disciplinary hearing is distinct from the alleged underlying constitutional deprivation. *See Ortiz v. Russo*, No. 13-CV-05317, 2015 WL 1427247, at *14 (S.D.N.Y. Mar. 27, 2015) (because "Venettozzi's involvement was distinct from the constitutional

violations Plaintiff has alleged against the other Defendants, he cannot be held liable under §
1983 for violations that occurred prior to his review and were not ongoing").

The last allegation is conclusory and totally devoid of any facts plausibly suggesting that
Venettozi was involved in any constitutional violation. *See Murphy v. Spaulding*, No. 20-CV-
09013, 2020 WL 7248855, at *3 (S.D.N.Y. Dec. 7, 2020) (claiming that the warden created an
"atmosphere" permitting a violation to occur was insufficient to allege personal involvement);
*Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020)
(noting that the plaintiff "offer[ed] no factual allegations suggesting that Annucci was present for,
knew of, or even had any reason to know about the alleged" constitutional violation); *Ford v.
Aramark*, No. 18-CV-02696, 2020 WL 377882, at *14 (S.D.N.Y. Jan. 23, 2020) (dismissing claim
against prison official where "the Complaint lack[ed] any *non-conclusory* allegation" about that
official's personal involvement (emphasis in original)).

As Plaintiff has not alleged facts plausibly suggesting Venettozzi's personal involvement
in any constitutional violation, Plaintiff's claims against Venettozzi must be dismissed.

2. Otaiza

Like Venettozzi, Plaintiff's conclusory allegations of retaliation for filing prior grievances
and civil actions against individual non-parties to this litigation does not impute Otaiza's personal
involvement in any First Amendment violation; nor do Plaintiff's threadbare allegations
concerning the conditions of his confinement or a purported conspiracy. Plaintiff's First and Eighth
Amendment claims against Otaiza must therefore be dismissed.

Unlike Venettozzi, however, Plaintiff sufficiently pleads Otaiza's personal involvement in
the underlying due process violation. Plaintiff alleges that Otaiza denied him two "material"
witnesses, including the Honorable Shira Scheindlin and Deputy Commissioner Joseph Bellnier.

11

(Compl. at 4). He further alleges that Otaiza was not an impartial hearing officer in light of her statement that the witnesses could not talk at the same time, in that she prevented him from making objections to documents that she permitted him only 24 hours to review, and she had a guilty disposition completed prior to the conclusion of the hearing. (*Id*. at 4, 6-8). Accordingly, Plaintiff has pled plausibly that Otaiza was personally involved in the alleged due process violation.

B.  Failure to State a Procedural Due Process Claim (Fourteenth Amendment)

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020).

Plaintiff submits that his liberty interest was implicated by the disciplinary proceeding in that during his three months in keeplock, he was consistently served food too cold to eat, and he lost nineteen pounds. (Compl. at 10). Plaintiff alleges that he remained in his cell twenty-four hours per day, except when he went to "recreation" in a "cage by himself" in the yard. (*Id*. at 10-11). As a result of the disciplinary decision, Plaintiff was also removed from the Earned Housing Unit honor block. (*Id*. at 8-9). Plaintiff alleges that in addition to facing a loss of recreation and privileges, phones, packages and commissary, he was "subjected to second hand smoke of cigarettes, marijuana and K2 everyday" and "had to be in his cell with a wet cloth over his nose to diminish the effects of second hand smoke, and illegal substances." (*Id*. at 9). Plaintiff further

12

alleges he "underwent mental anguish and emotional distress," lost his job as a Law Library Clerk, was unable to file grievances, was subjected to inadequate showers, was denied the ability to purchase hygiene products, and was essentially treated as on outcast. (*Id*. at 9-11). These allegations, individually and cumulatively, fail to establish the existence of a constitutionally significant liberty interest deprivation.

A prisoner's liberty interest is implicated by prison disciplinary proceedings only if the discipline imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). Indeed, dismissal has been found appropriate where the period of confinement in relation to disciplinary hearings is shorter than 101 days. *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) ("[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual."); *see also Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *10 (S.D.N.Y. June 23, 2021) (no protected liberty interest in inmate's sixty-day keeplock sentence); *Reaves v. Williams*, No. 95-CV-00281, 1997 WL 10132, at *5 (S.D.N.Y. Jan. 10, 1997) (no protected liberty interest in Sing Sing inmate's ninety-day keeplock sentence, sixty-nine days of which were served); *Rivera v. Coughlin*, No. 92-CV-03404, 1996 WL 22342, at *5 (S.D.N.Y. Jan. 22, 1996) (no protected liberty interest in inmate's eighty-nine day disciplinary segregation and loss of privileges); *Rosario v. Selsky*, No. 94-CV-06872, 1995 WL 764178, at *6 (S.D.N.Y. Dec. 28, 1995) (no protected liberty interest in eighty-five day confinement in the SHU).

Plaintiff's removal from the Earned Housing Unit and temporary loss of the various privileges alleged in this case, namely recreation, phone, packages, and commissary, do not represent the types of deprivations which could reasonably be viewed as imposing atypical and

significant hardship on an inmate. *Jackson*, 2021 WL 2581340, at *4 (ninety-day loss of recreation, packages, commissary, phone use, and personal property did not implicate a protected liberty interest); *see also Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *7 (S.D.N.Y. Feb. 17, 2021); *Frazier v. Coughlin*, 81 F.3d 313, 315, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); *Nogueras v. Coughlin*, No. 94-CV-04094, 1996 WL 487951, at *5 (S.D.N.Y. Aug. 27, 1996) ("Restrictions on telephone use, recreational activities, access to law libraries, visitation, personal property, educational and employment opportunities" did not amount to atypical hardship.).

Plaintiff's other allegations of temporary deprivation of hygiene products, "inadequate showers," the denial of warm food, and confinement for the majority of the day do not amount to a constitutional violation. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003); *Cruz v. Jackson*, No. 94-CV-02600, 1997 WL 45348, at *6 (S.D.N.Y. Feb. 5, 1997). "[O]rdinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004). Likewise, Plaintiff's allegations that he was prevented from filing grievances does not establish the deprivation of a protected liberty interest. Prison grievance procedures "do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *see also Cancel v. Goord*, No. 00-CV-02042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[T]he refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983."). In short, Plaintiff has not alleged plausibly that he possessed a

liberty interest sufficient to state a claim against Defendants for a violation of the Fourteenth Amendment and the claim must therefore be dismissed.

In any event, Plaintiff's allegations establish that he received all the process that was due. As regards disciplinary hearings, an inmate should receive: "(1) advance written notice of the charges against him to enable him to marshal the facts and prepare a defense; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a short written statement presenting the reasons and evidence supporting any disciplinary action ultimately taken." *Amaker v. Coombe*, No. 96-CV-01622, 2002 WL 523388, at *9 (S.D.N.Y. Mar. 29, 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The requirements of due process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff alleges that he was denied due process at the disciplinary hearing because he was denied two "material" witnesses: the Honorable Shira Scheindlin and Deputy Commissioner Joseph Bellnier. (Compl. at 4). He further alleges that Otaiza was a biased hearing officer because there existed a predetermination of guilt. The right of inmates to call witnesses at a prison disciplinary hearing is not absolute. *Wolff*, 418 U.S. at 566-67. A prison official may refuse to call witnesses as long as the refusal is justifiable. *Id*. A hearing officer may deny a prisoner's request to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991). "[I]f a witness will not testify if called, it cannot be a 'necessity' to call him," and therefore, a hearing officer's refusal to call such a witness does not constitute a violation of the prisoner's constitutional rights. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). It is very unlikely that either Judge Scheindlin or Deputy Commissioner Bellnier would have testified

as witnesses given their positions and status; and although Plaintiff maintains that these proposed witnesses would have offered relevant testimony, neither were involved with the charge and misbehavior reports at issue in Plaintiff's disciplinary proceeding.

Plaintiff's assertion that Otaiza was a biased hearing officer is based upon conclusory and speculative allegations. Plaintiff alleges that Otaiza was biased based upon her request that individuals not speak at the same time and because she did not permit Plaintiff to make further objection concerning the alleged late disclosure of documents. (Compl. at 6-7). A basic requirement of due process is an unbiased adjudicator, who does not prejudge the evidence, and who cannot say how he would evaluate evidence that he has not seen. *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990). Plaintiff's allegations, however, do not give rise to an inference of bias; rather, they go to her discretion in conducting the hearing. Plaintiff's allegations reflect conduct within a hearing officer's discretion to "keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566; *see also Brooks v. Piecuch*, 245 F. Supp. 3d 431, 446 (W.D.N.Y. 2017) (hearing officer was within his discretion in refusing to permit certain objections at disciplinary hearing). It is beyond cavil that a clear recording of the hearing is necessary to preserve the record and for transcription of a proceeding in general; it is a common instruction to be given and carries with it no "inference of a predetermined disposition of guilt." (Pl. Opp. at 6). Simply because Otaiza "denied evidence or denied witnesses does not mean that [s]he has prejudged the case." *Pacheco v. Vanwyk*, No. 94-CV-00456, 1997 WL 642540, at *12 (N.D.N.Y. Oct. 15, 1997), *aff'd*, 164 F.3d 618 (2d Cir. 1998). Accordingly, Plaintiff's Fourteenth Amendment claim is dismissed.

C.   <u>Failure to State a Conditions of Confinement Claim (Eighth Amendment)</u>

To the extent Plaintiff asserts Eighth Amendment violations for the conditions described *supra*, the claim fails on the merits. The Eighth Amendment instructs: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Novoa*, 2021 WL 431445, at *7 (citing *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)); *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4-5 (S.D.N.Y. Sept. 8, 2020). "[T]he deprivation alleged by the prisoner must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities.'" *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996).

Plaintiff's allegations concerning the conditions of his confinement are the same allegations he pled to support his assertion that he was deprived of a liberty interest with respect to his Fourteenth Amendment claim. Specifically, the allegations are that during his three months in keeplock, Plaintiff was served food too cold to eat, lost nineteen pounds, was in his cell twenty-four hours per day except when he went to recreation, was subjected to inadequate showers, was denied the ability to purchase hygiene products, and was "subjected to second hand smoke of cigarettes, marijuana and K2 everyday." (*Id*. at 8-11). These conditions are not in themselves "sufficiently serious to provide a basis for an Eighth Amendment claim." *Rivera v. Senkowski*, 62 F.3d 80, 85 (2d Cir. 1995); *Cruz*, 1997 WL 45348, at *6-7.

Because the Complaint fails to satisfy the objective prong, the Court need not, and does not, reach the question of whether Plaintiff's allegations are sufficient to satisfy the subjective prong. Accordingly, and in addition to the fact that Plaintiff has failed to plead the personal involvement of either Defendant in an Eighth Amendment violation, this claim is dismissed on the additional ground that it fails to state a claim for relief.

### D.  Failure to State a Retaliation Claim (First Amendment)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-03632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for

18

retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff alleges that Defendants' conduct in connection with the disciplinary hearing was taken in retaliation "due to the numerous grievances, formal complaints and court proceedings Plaintiff filed against . . . Sgt. Alvarado." (Compl. at 1, 4-5). To the extent Plaintiff alleges that the roots of the alleged retaliation are found in Plaintiff's filing of *Arriaga I* and his grievances against Sergeant Alvarado, such conduct constitutes protected activity. The Complaint fails, however, to sufficiently allege an adverse action and a causal connection between the alleged adverse action and Plaintiff's protected conduct. *Dorsey*, 468 F. App'x at 27. Plaintiff alleges that "the retaliation . . . is obviously part of Sgt. Alvarado's influence on other staff." (Compl. at 9). These allegations are speculative and conclusory, and are simply insufficient to support the inference that Plaintiff's filing of *Arriaga I* and his grievances against a non-party to this action were a substantial or motivating factor for any of Defendants' alleged conduct in connection with the disciplinary hearing and affirmation of the guilty disposition. Plaintiff's allegations of retaliation are made against individuals who are not parties to this action, and he does not allege facts in the Complaint or in his opposition to this motion that either Defendant was involved in the alleged retaliation or the issuance of the misbehavior report that led to the disciplinary hearing. Accordingly, Plaintiff's retaliation claims are dismissed.

E. Failure to State a Conspiracy Claim

Plaintiff alleges that the purported retaliation was a conspiracy among Defendants and other non-parties to this action. To survive a motion to dismiss, the claim must allege facts plausibly suggesting that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in

19

furtherance of that goal. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Concepcion v. City of New York*, No. 05-CV-08501, 2008 WL 2020363, at *5 (S.D.N.Y. May 7, 2008) (affirming the continued viability of the *Ciambriello* standards when analyzing a conspiracy claim *vis-à-vis* a motion to dismiss). The plaintiff must not only allege a conspiracy, but he must also allege the "actual deprivation of constitutional rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citing *Malsh v. Austin*, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Id.*; *see also Vega v. Artus*, 610 F. Supp. 2d 185, 202-03 (N.D.N.Y. 2009).

As discussed *supra*, Plaintiff has failed to allege plausibly a violation of his First, Eighth, and Fourteenth Amendment rights. Thus, any conspiracy claims alleged by Plaintiff in connection with the dismissed constitutional claims are likewise dismissed. *Romer*, 119 F. Supp. 2d at 363-64.

Moreover, to the extent Plaintiff's conspiracy claim rests upon the allegation that a fellow prisoner "overheard staff talking about . . . (Plaintiff) saying no matter what objections or defense Plaintiff brings forth . . . Plaintiff will still be found guilty" (Compl. at 7), it cannot survive the motion to dismiss. State officials carrying out an agency's business cannot conspire with one another as a matter of law under § 1983. *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1977). Each Defendant is alleged to be a DOCCS employee during the relevant period and were acting within the scope of their employment. Plaintiff does not allege facts plausibly suggesting that each Defendant possessed an independent personal purpose so as to satisfy an exception to intra-corporate conspiracy doctrine. *Vega*, 610 F. Supp. 2d at 206. Accordingly, any conspiracy claim pled by Plaintiff likewise fails.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In this case, the Complaint is dismissed with prejudice because any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 28, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.[3]

**SO ORDERED:**

Dated:　White Plains, New York
　　　　November 19, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[3] Given the conclusions reached herein, the Court need not and does not address Defendants' remaining argument as to qualified immunity.

21